**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | MDL No. 3179 |

**PLAINTIFF CITY OF ARCADIA'S RESPONSE TO DEFENDANTS' MOTION TO
TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED
PRETRIAL PROCEEDINGS**

**TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ........................................................................................ 3

III.   ARGUMENT ..................................................................................................... 4

      A.     Plaintiff Agrees That Centralization Is Appropriate ............................................... 4

      B.     The Panel Should Transfer the Related Actions to the Eastern District of
            Wisconsin .................................................................................................... 4

      C.     The Northern District of California Is Also An Appropriate Transferee Forum... 10

      D.     The Northern District of Illinois Is Not An Ideal Transferee Forum .................... 12

IV.    CONCLUSION ................................................................................................. 13

i

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*In re Amtel, Inc. Securities Litig.*,
447 F. Supp. 466 (J.P.M.L. 1978)...................................................................5, 6

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018)...................................................................8

*In re: Bard IVC Filters Prods. Liab. Litig.*,
122 F. Supp. 3d 1375 (J.P.M.L 2015)...................................................................9

*Cannara v. Nemeth*,
467 F. Supp. 3d 877 (N.D. Cal. 2020), *aff'd*, 21 F.4th 1169 (9th Cir. 2021).....................11

*In re Career Acad. Antitrust Litig.*,
342 F. Supp. 753 (J.P.M.L. 1972)...................................................................12

*In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*,
No. MDL 3161, 2025 WL 2937092 (J.P.M.L. Oct. 1, 2025) ............................................10

*In re Clark Oil & Ref. Corp. Antitrust Litig.*,
364 F. Supp. 458 (J.P.M.L. 1973)...................................................................13

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
509 F. Supp. 3d 1368 (J.P.M.L. 2020)...................................................................7

*In re Corn Derivatives Antitrust Litig.*,
486 F. Supp. 929 (J.P.M.L. 1980)...................................................................9

*In re Falstaff Brewing Corp. Antitrust Litig.*,
434 F. Supp. 1225 (J.P.M.L. 1977)...................................................................9

*In re Google Antitrust Litig.*,
521 F. Supp. 3d 1358 (J.P.M.L. 2021)...................................................................10

*In re Int. Rate Swaps Antitrust Litig.*,
190 F. Supp. 3d 1364 (J.P.M.L. 2016)...................................................................7

*Jackson Fam. Wines, Inc. v. Zurich Am. Ins. Co.*,
No. 22-CV-07842-AMO (DMR), 2024 WL 3325382 (N.D. Cal. July 8, 2024) ..........................11

*Kunde Enters., Inc. v. Nat'l Sur. Corp.*,
608 F. Supp. 3d 883 (N.D. Cal. 2022) ...................................................................11

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    159 F. Supp. 3d 1382 (J.P.M.L. 2016)..............................................................7

*In re Lithium Ion Batteries Antitrust Litig.*,
    923 F. Supp. 2d 1370 (J.P.M.L. 2013)..............................................................10

*In re Medical Waste Services Antitrust Litig.*,
    277 F. Supp. 2d 1382 (J.P.M.L. 2003)..............................................................5

*Paradise Unified Sch. Dist. v. Fire Victim Tr.*,
    No. 20-CV-05414-HSG, 2021 WL 428629 (N.D. Cal. Feb. 8, 2021), *aff'd
    sub nom. In re Pac. Gas & Elec. Co.*, No. 21-15447, 2022 WL 911780
    (9th Cir. Mar. 29, 2022) ....................................................................................11

*In re Peruvian Rd. Litig.*,
    380 F. Supp. 796 (J.P.M.L. 1974)......................................................................8

*In re Petroleum Prods. Antitrust Litig.*,
    419 F. Supp. 712 (J.P.M.L. 1976)......................................................................9

*In re PG&E Corp. Sec. Litig.*,
    No. 5:18-CV-03509-EJD, 2025 WL 2781745 (N.D. Cal. Sept. 30, 2025)........11

*In re Qualcomm Antitrust Litig.*,
    273 F. Supp. 3d 1373 (U.S.J.P.M.L. 2017) ....................................................5, 10

*In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on October 1,
    2017*,
    347 F. Supp. 3d 1355 (J.P.M.L. 2018)...............................................................3

*Solano v. Vistra Corp.*,
    No. 25-CV-02073-EKL, 2026 WL 60063 (N.D. Cal. Jan. 7, 2026)..................11

*Sprawldef v. Fed. Emergency Mgmt. Agency*,
    No. 15-CV-02331-LB, 2016 WL 6696046 (N.D. Cal. Nov. 15, 2016),
    *aff'd*, 717 F. App'x 733 (9th Cir. 2018)...........................................................11

*In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*,
    96 F. Supp. 3d 1378 (J.P.M.L. 2015).................................................................7

*United States v. Pac. Gas & Elec. Co.*,
    153 F. Supp. 3d 1076 (N.D. Cal. 2015) .............................................................11

*In re Wiring Device Antitrust Litig.*,
    444 F. Supp. 1348 (J.P.M.L. 1978)....................................................................6

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    509 F. Supp. 3d 1375 (J.P.M.L. 2020)...............................................................10

iii

**Statutes**

28 U.S.C. § 1404...................................................................................................................4

28 U.S.C. § 1407.........................................................................................................1, 2, 3, 4

**Other Authorities**

*Ann. Manual Complex Lit.*,
     § 20.131 (4th ed.) (2025) .............................................................................................3

*Newberg and Rubenstein on Class Actions*,
     § 6:60 (6th ed.) (2025) .................................................................................................3

Pursuant to 28 U.S.C. § 1407 and Rule of Procedure of the Judicial Panel on Multidistrict Litigation 6.2(e), Plaintiff City of Arcadia ("Arcadia") in *City of Arcadia v. American Industrial Partners, LLC, et al..*, No. 1:25-cv-02005 (E.D. Wis. Dec. 22, 2025), Dkt. 1, respectfully submits this response to Movant Defendants'[1] ("Defendants") Motion to Transfer and Centralize Related Actions for Consolidated Pretrial Proceedings ("Motion") (Dkts. 1, 1-1). Arcadia agrees that centralization of the related actions pursuant to 28 U.S.C. § 1407 is appropriate but opposes transfer to the Northern District of Illinois, where no action is currently pending. Instead, for the reasons articulated herein, Arcadia believes transfer is more appropriate to the Eastern District of Wisconsin, where the vast majority of the actions are currently pending, or to the Northern District of California, which is a forum with extensive experience in complex antitrust MDLs and with fire-related litigation, specifically.

## I.    INTRODUCTION

Plaintiff Arcadia respectfully submits this opposition to Defendants' Motion. While Arcadia agrees that centralization under 28 U.S.C. § 1407 is appropriate given the number of related actions and their substantial overlap in factual and legal issues, Defendants' request to transfer them to the Northern District of Illinois is inappropriate. The related actions should be centralized in the Eastern District of Wisconsin, where most of the related cases are already pending and where the litigation is more procedurally advanced; or to the Northern District of California, which has extensive experience presiding over and managing complex antitrust class actions and fire-related litigation.

---

[1] Movant Defendants are: Oshkosh Corporation; Pierce Manufacturing, Inc.; REV Group, Inc.; E-One, Inc.; Ferrara Fire Apparatus, Inc.; Kovatch Mobile Equipment Corporation; Spartan Fire, LLC; Smeal SFA, LLC; Smeal LTC, LLC; Rosenbauer America, LLC; Rosenbauer South Dakota, LLC; Rosenbauer Minnesota, LLC; AIP, LLC; American Industrial Partners Capital Fund IV, LP; American Industrial Partners Capital Fund IV (Parallel), LP; AIP/CHC Holdings, LLC; and Fire Apparatus Manufacturers' Association.

The Eastern District of Wisconsin is a natural and more efficient forum for coordinated pretrial proceedings at this juncture than the Northern District of Illinois. Most of the related federal actions are already pending there before U.S. District Judge Byron B. Conway. Judge Conway has already consolidated related direct purchaser plaintiff (DPP) actions, consolidated related indirect purchaser plaintiff (IPP) actions, and begun case management proceedings. Transferring the few cases pending in other districts to Judge Conway in the Eastern District of Wisconsin, as opposed to the Northern District of Illinois, promotes judicial economy, avoids unnecessary disruption, and preserves the efficiencies already achieved. Section 1407 exists to streamline litigation - not to uproot it from the district where it is already concentrated and progressing.

At the same time, this litigation implicates uniquely significant public safety concerns. Plaintiff Arcadia is the only California-based class representative currently in this litigation. California public entities operate in an environment of heightened wildfire risk and escalating fire destruction. For cities like Arcadia, competitively priced and reliable fire apparatus are not merely capital expenditures but critical tools for protecting lives, property, and public infrastructure. Alleged price inflation in this market materially burdens public entities in states like California that face increasingly frequent and catastrophic wildfire events.

While the Eastern District of Wisconsin is an appropriate and efficient transferee forum given the concentration of cases and existing proceedings, if the Panel considers an alternative venue as necessary, the Northern District of California would provide an excellent forum—particularly in light of California's substantial interest in the subject matter of this litigation and the presence of a California public entity class representative.

2

For these reasons, the Panel should deny Defendants' request to transfer this litigation to the Northern District of Illinois and instead centralize the related actions in the Eastern District of Wisconsin or the Northern District of California.

## II.   LEGAL STANDARD

Civil actions pending in different districts are properly centralized where the actions involve "one or more common questions of fact," where transfer would serve "the convenience of parties and witnesses," and where pretrial consolidation would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Movants bear the burden of showing that centralization is warranted. *See In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on October 1, 2017*, 347 F. Supp. 3d 1355, 1357–58 (J.P.M.L. 2018) (denying centralization of 13 actions filed in eight districts).

"In selecting a transferee district and MDL judge, the Panel is attempting to promote the efficient resolution of a piece of complex litigation." *Newberg and Rubenstein on Class Actions*, § 6:60 (6th ed.) (2025). The Panel "is vested with the authority to consolidate cases for pre-trial purposes and thereby establish a multidistrict litigation (or MDL) in a particular forum." *Id*. § 6:45. That authority is vested in "section 1407[, which] gives essentially unfettered discretion to the JPML to pick a site for an MDL[.]" *Id*. No single factor determines the selection of the transferee district, "but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Ann. Manual Complex Lit.*, § 20.131 (4th ed.) (2025).

Here, these factors militate against transferring the related actions to the Northern District of Illinois and in favor of transferring them to either the Eastern District of Wisconsin or the Northern District of California for coordinated or consolidated pretrial proceedings.

3

### III.    ARGUMENT

#### A.    Plaintiff Agrees That Centralization Is Appropriate

Plaintiff Arcadia agrees with Defendants that centralization is appropriate pursuant to 28 U.S.C. § 1407 given that there are over a dozen related actions that involve "one or more common questions of fact"; transfer would serve "the convenience of parties and witnesses"; and pretrial consolidation would "promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407(a).

#### B.    The Panel Should Transfer the Related Actions to the Eastern District of Wisconsin

The Panel should transfer all related actions to the Eastern District of Wisconsin instead of the Northern District of Illinois for several reasons:

*First*, most of the related cases are pending in the Eastern District of Wisconsin, and the first several related cases were filed there.[2] Nine of the 14 pending related actions are already before Judge Conway in Green Bay, Wisconsin.[3] Three of the other related actions, two pending in Massachusetts and one in New Jersey,[4] have motions pending under 28 U.S.C. § 1404(a) seeking transfer to the Eastern District of Wisconsin, further signaling these Plaintiffs' preference for that

---

[2] *See City of La Crosse v. Oshkosh Corp., et al.*, No. 1:25-cv-01252-BBC (E.D. Wis. Aug. 20, 2025); *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC (E.D. Wis. Oct. 7, 2025); *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC (E.D. Wis. Oct. 31, 2025); *City of Onalaska v. Oshkosh Corp., et al.*, No. 1:25-cv-01717-BBC (E.D. Wis. Nov. 4, 2025); *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC (E.D. Wis. Nov. 14, 2025); *City of Ann Arbor v. Oshkosh Corp., et al.*, No. 1:25-cv-01973-BBC (E.D. Wis. Dec. 16, 2025); *City of Liberty v. Oshkosh Corp., et al.*, No. 1:25-cv-02002-BBC (E.D. Wis. Dec. 19, 2025); *City of Arcadia v. Am. Indus. Partners LLC*, et al., No. 1:25-cv-02005-BBC (E.D. Wis. Dec. 22, 2025); *Commack Fire Dist. v. Oshkosh Corp., et al.*, No. 1:25-02013-BBC (E.D. Wis. Dec. 22, 2025).

[3] *Id.*

[4] *See City of Revere v. AIP, LLC, et al.*, No. 1:25-cv-13462-AK (D. Mass. Nov. 19, 2025); *City of Chelsea v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 1:25-cv-13643-AK (D. Mass. Dec. 2, 2025); *Borough of Roseland v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 2:25-cv-18312-MEF-CF (D.N.J. Dec. 9, 2025).

forum.[5] On January 29, 2026, a complaint was filed in the District of Kansas on behalf of Unified Government of Wyandotte County and Kansas City, Kansas; because the action was recently filed no substantive proceedings have yet occurred.[6] The final related action is a state-filed complaint in Louisiana,[7] although Defendants have signaled their intent to remove that case to federal court.[8] Accordingly, the clear majority of the pending related actions are already before, or actively seeking transfer to, the Eastern District of Wisconsin, making it a logical and efficient forum for centralization. *See In re Amtel, Inc. Securities Litig.*, 447 F. Supp. 466 (J.P.M.L. 1978) (seven antitrust actions centralized in the Southern District of New York - the choice of Plaintiffs in four of the seven pending actions); *In re Medical Waste Services Antitrust Litig.*, 277 F. Supp. 2d 1382 (J.P.M.L. 2003) (proceedings centralized in the District of Utah – the only suggested transferee district in which more than one action was pending); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373 (U.S.J.P.M.L. 2017) (proceedings centralized in the Northern District of California - four of six antitrust actions and 20 of the couple dozen potential tag-along actions were pending in the district).

*Second*, the Eastern District of Wisconsin is well positioned to serve as the transferee forum. On December 30, 2025, the Court created two consolidated proceedings: *In re: Direct Purchaser Fire Apparatus Antitrust Litigation*, Case No. 25-cv-1543 (DPP Actions), and *In re:*

---

[5] *See City of Revere v. AIP, LLC, et al.*, No. 1:25-cv-13462-AK (D. Mass. Jan. 3, 2026) Dkt. 93, (D. Mass. Jan. 7, 2026) Dkt. 94; *City of Chelsea v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 1:25-cv-13643-AK (D. Mass. Jan. 2, 2026) Dkt. 32 & 33; *Roseland v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 2:25-cv-18312-MEF-CF (D.N.J. Jan. 2, 2025) Dkt. 25, (D.N.J. Jan. 15, 2025) Dkt. 26.

[6] *Unified Gov't of Wyandotte Cnty. and Kansas City, Kansas v. REV Group, Inc., et al*, No. 2:26-cv-02057 (D. Kan. Jan. 29, 2026).

[7] *City of Plaquemine v. Oshkosh Corp., et al.*, No. 84877 (La. 18th Dist. Dec. 30, 2025).

[8] See *In Re: Fire Apparatus Antitrust Litig.*, MDL No. 3179 (J.P.M.L. Jan. 15, 2026) Dkt. 1-1 at 1.

*Indirect Purchaser Fire Apparatus Antitrust Litigation*, Case No. 25-cv-1252 (IPP Actions).[9] Defendants' motion to consolidate the DPP Actions and IPP Actions is fully briefed and remains pending before Judge Conway.[10] Furthermore, additional motions concerning leadership and case management, including a motion to modify the appointment of class counsel[11] and a motion to establish a Plaintiff Executive Committee, have been filed.[12] The Court has also entered a stay of all deadlines through March 12, 2026,[13] reflecting its active oversight of the litigation. Thus, the Eastern District of Wisconsin has already undertaken meaningful case management efforts. *See In re Amtel, Inc. Securities Litig.*, 447 F. Supp. 466 (J.P.M.L. 1978) (seven antitrust actions centralized in the Southern District of New York as pretrial proceedings in that district were more procedurally advanced in comparison to other districts); *In re Wiring Device Antitrust Litig.*, 444 F. Supp. 1348 (J.P.M.L. 1978) (antitrust class actions pending in six districts transferred to the Eastern District of New York as pretrial proceedings there were relatively advanced in comparison to other actions in other districts).

*Third*, Judge Conway is well-positioned to oversee this litigation. During his confirmation process, he was recognized as possessing the experience, temperament, and professional judgment necessary for federal judicial service.[14] Judge Conway brings both the benefit of careful vetting

---

[9] *See In re: Indirect Purchaser Fire Apparatus Antitrust Litig.*, No. 1:25-cv-01252 (E.D. Wis.) Dkt. 49.

[10] *Id*. Dkt. 40 & 41.

[11] *Id*. Dkt. 56.

[12] *Id*. Dkt. 75.

[13] *Id*. Dkt. 45.

[14] Senator Dick Durbin commented in Judge Conway's nomination hearing, the "history of the appointment to fill federal vacancies in the state of Wisconsin" has been "politically fraught" and his nomination was "nothing short of a politically miracle to have both senators introduce [him]*." Hearing on the Nominations of Hon. Byron B. Conway, Jonathan E. Hawley, April M. Perry, Gail A. Weilheimer, Panel II: Hearing Before the S. Comm. on the Judiciary*, 118th Cong. (Jul. 31 2024); Senator Tammy Balwdwin commented Judge Conway has "both the experience and the temperament necessary to serve the Eastern District of Wisconsin" and "an exceptional

and the capacity to devote substantial attention to this complex litigation. Importantly, he has not yet presided over a multidistrict litigation, meaning he can manage this matter with focused attention and without competing MDL obligations. *See*, *e.g.*, *In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1369-70 (J.P.M.L. 2020); *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016); *In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015).

*Fourth*, most of the Manufacturer Defendants (*i.e.*, Rosenbauer America LLC, Oshkosh Corporation, Pierce Manufacturing Inc., and the REV Group Inc.) are either incorporated or have their principal place of business in Wisconsin.[15] Moreover, Pierce Manufacturing, Inc., a wholly owned subsidiary of Oshkosh Corporation, maintains its primary manufacturing facility in Appleton, Wisconsin.[16] *See In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382 (J.P.M.L. 2016) (several defendants were located in or near the transferee district, including defendants named in most actions, such that relevant documents and witnesses were likely to be found there). The presence of most Manufacturer Defendants in Wisconsin suggests many relevant witnesses and documents will likely be in Wisconsin as well.

*Fifth*, relatedly, the other Defendants are incorporated and headquartered across the country—from Delaware and New York (AIP and related entities), to Delaware and South Dakota (Rosenbauer America LLC), in addition to Florida (Fire Apparatus Manufacturers' Association).[17]

---

judicial candidate." *accessible at* https://www.c-span.org/clip/us-senate/sen-baldwin-speaks-for-nomination-of-byron-conway/5134124.

[15] *See Arcadia Compl.* at 9-14.

[16] *Pierce Manufacturing Expands Facilities as Part of $150M in Investments*, Fire Apparatus & Emergency Equipment (Dec. 19, 2025), *available at* https://www.fireapparatusmagazine.com/industry-news/pierce-manufacturing-expands-facilities-as-part-of-150m-in-investments/ (last visited Feb. 11, 2026).

[17] *Id.*

This geographic dispersion underscores that no single forum predominates from the standpoint of where the Defendants are located, besides Wisconsin. Wisconsin is both a state of incorporation and principal place of business for multiple core Manufacturer Defendants. In light of that concentration—and Wisconsin's central location relative to the remaining Defendants—the Eastern District of Wisconsin is a practical and appropriate forum for this litigation.

*Sixth*, among the districts in which the federal related actions are pending[18] (and also including the Northern District of Illinois), the Eastern District of Wisconsin maintains a comparatively moderate and efficient caseload. As of December 31, 2025, the Eastern District of Wisconsin had 2,437 pending cases across five judgeships, averaging 487 pending cases per judgeship, with 530 filings per judgeship and 482 weighted filings per judgeship.[19] Unlike heavier-volume districts, such as the Northern District of Illinois or the District of New Jersey, the Eastern District of Wisconsin's docket reflects a balanced caseload without the extreme backlog pressures seen in higher-volume MDL hubs.[20] *See In re Peruvian Rd. Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974) (condition of court's docket is relevant factor in selection of transferee forum: "the fact that the District of Idaho has a significantly lighter civil action docket than the Southern District of Texas and, therefore, the transferee judge will be able to devote quick attention to this litigation."); *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018) ("[the District South of Carolina] is not burdened by many MDLs and has the capacity and

---

[18] This includes the District of Massachusetts, District of New Jersey, the Eastern District of Wisconsin, and the District of Kansas.

[19] United States District Courts – National Judicial Case Profile, *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (last visited Feb. 11, 2026); "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Explanation of Selected Terms, U.S. Courts, *available at* https://www.uscourts.gov/sites/default/files/2025-02/explanation-of-selected-terms-december-2024.pdf (last visited Feb. 11, 2026).

[20] *Id.*

resources to successfully guide this litigation."); *In re: Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1377 (J.P.M.L 2015) ("[t]he District of Arizona is not burdened by many MDLs and has the capacity and resources to successfully guide this litigation.").

*Seventh*, the Eastern District of Wisconsin is among the faster courts in resolving civil cases. The median time from filing to disposition in civil cases is 5.7 months, which is notably shorter than many high-volume districts, and the quickest among those districts previously mentioned.[21] In addition, only 6.8% of civil cases are over three years old, reflecting a low backlog of aging cases.[22] These statistics demonstrate the Eastern District of Wisconsin is well-positioned to manage this complex litigation efficiently through pretrial proceedings and toward trial. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (speed of disposition is relevant factor in selection of transferee forum: "[T]he District of New Jersey stands out because, according to the latest statistics available, that district is in the best position to process this litigation toward its most expeditious conclusion . . . [it] has disposed of its cases quicker than the other three districts.") *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1231 (J.P.M.L. 1977) (the civil docket "in the Eastern District of Missouri is more current . . . [and] in a better position to process the pretrial proceedings in this litigation toward their most expeditious termination."); *In re Petroleum Prods. Antitrust Litig.*, 419 F. Supp. 712, 719 (J.P.M.L. 1976) ("the Central District of California] terminates actions significantly quicker . . . As a result, in the long run the Central District of California is in a better position to process this litigation toward its most expeditious conclusion.").

---

[21] *Id.* National average 7 months; New Jersey 7.5 months; Illinois Northern 6.2 months; Massachusetts 7 months; Kansas 7.1 months.
[22] *Id*. National average 27.6%; New Jersey 56.5%; Illinois Northern 9.6%; Massachusetts 7.8%; Kansas 4.3%.

9

*Finally*, the Eastern District of Wisconsin has historically been underutilized for multidistrict litigation, ranking in the bottom third nationally in terms of cumulative terminated MDLs and third among the seven district courts in the Seventh Circuit.[23] This relative lack of prior MDL concentration further supports centralization in Wisconsin, as the district is well situated to devote the necessary judicial resources to this action without competing MDL demands.

### C. The Northern District of California Is Also An Appropriate Transferee Forum

The Northern District of California would also serve as an appropriate (and excellent) transferee forum. The Northern District of California has repeatedly demonstrated the judicial resources, institutional experience, and expertise necessary to manage complex antitrust multidistrict litigation efficiently.

The Panel has consistently recognized the Northern District of California's ability to oversee sophisticated antitrust matters. *See, e.g.*, *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) (noting that the Northern District of California "contains the necessary judicial resources and expertise to manage this litigation efficiently"); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371–72 (J.P.M.L. 2013) (same); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 509 F. Supp. 3d 1375, 1376 (J.P.M.L. 2020) (selecting the Northern District of California as transferee district); *In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1360 (J.P.M.L. 2021) (same); *In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*, No. MDL 3161, 2025 WL 2937092, at *2 (J.P.M.L. Oct. 1, 2025) (designating the Northern District of California as the most appropriate transferee forum).

---

[23] J.P.M.L., Multidistrict Litigations Terminated Through September 30, 2025, U.S. Courts, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2025_Terminated_Litigations_Report_0.pdf (last visited Feb. 11, 2026).

Moreover, the Northern District of California would provide a particularly appropriate forum in light of California's substantial public safety interest in the subject matter of this litigation. Plaintiff Arcadia is the only California-based class representative currently participating in these proceedings. California public entities operate under uniquely heightened wildfire risk and escalating fire destruction. For cities such as Arcadia, competitively priced and reliable fire apparatus are essential tools for protecting lives, property, and public infrastructure. Alleged anticompetitive price inflation in this market disproportionately burdens public entities in wildfire-prone states like California.

And aside from its expertise in complex antitrust MDLs, the Northern District of California has already presided over complex fire-related litigation. *See Solano v. Vistra Corp.*, No. 25-CV-02073-EKL, 2026 WL 60063 (N.D. Cal. Jan. 7, 2026); *In re PG&E Corp. Sec. Litig.*, No. 5:18-CV-03509-EJD, 2025 WL 2781745 (N.D. Cal. Sept. 30, 2025); *Jackson Fam. Wines, Inc. v. Zurich Am. Ins. Co.*, No. 22-CV-07842-AMO (DMR), 2024 WL 3325382 (N.D. Cal. July 8, 2024); *Kunde Enters., Inc. v. Nat'l Sur. Corp.*, 608 F. Supp. 3d 883 (N.D. Cal. 2022); *Paradise Unified Sch. Dist. v. Fire Victim Tr.*, No. 20-CV-05414-HSG, 2021 WL 428629 (N.D. Cal. Feb. 8, 2021), *aff'd sub nom. In re Pac. Gas & Elec. Co.*, No. 21-15447, 2022 WL 911780 (9th Cir. Mar. 29, 2022); *Cannara v. Nemeth*, 467 F. Supp. 3d 877 (N.D. Cal. 2020), *aff'd*, 21 F.4th 1169 (9th Cir. 2021); *Sprawldef v. Fed. Emergency Mgmt. Agency*, No. 15-CV-02331-LB, 2016 WL 6696046 (N.D. Cal. Nov. 15, 2016), *aff'd*, 717 F. App'x 733 (9th Cir. 2018); *United States v. Pac. Gas & Elec. Co.*, 153 F. Supp. 3d 1076 (N.D. Cal. 2015).

Accordingly, in addition to the Eastern District of Wisconsin, the Northern District of California would present a capable and experienced alternative should the Panel determine that centralization outside Wisconsin is warranted.

#### D. The Northern District of Illinois Is Not An Ideal Transferee Forum

Transfer to the Northern District of Illinois would not be as appropriate as transfer to the Eastern District of Wisconsin or the Northern District of California. No related actions are currently pending in the Northern District of Illinois, and thus no procedural advancement has taken place there. As explained *infra*, the Panel often considers the procedural posture and existing case management efforts when selecting a transferee forum. Here, the Eastern District of Wisconsin has consolidated DPP actions and IPP actions separately, entered orders managing the litigation, and has several motions pending before it. By contrast, centralization in the Northern District of Illinois would require transferring the litigation to a district with no pending cases and no existing case management framework.

Nor does the Northern District of Illinois have a meaningful commercial or factual nexus to this litigation. None of the Manufacturer Defendants are incorporated in Illinois, nor does any Defendant maintain its principal place of business there. No manufacturing facilities relevant to this case are located in Illinois. The alleged conduct did not originate there, and no party has identified Illinois as a focal point of the alleged conspiracy. In contrast, several Defendants are headquartered or incorporated in Wisconsin, and key facilities, witnesses, and documents are located there. The absence of any substantive nexus to Illinois weighs heavily against transfer.

Defendants rely heavily on Chicago's status as a geographically central and accessible city. While Chicago is undoubtedly a major transportation hub, geographic centrality alone is not dispositive—particularly where another proposed forum is in close proximity and has a stronger nexus to the litigation. The Panel has previously rejected arguments that Chicago's accessibility compels transfer to the Northern District of Illinois over the Eastern District of Wisconsin. *See In re Career Acad. Antitrust Litig.*, 342 F. Supp. 753, 754 (J.P.M.L. 1972) (finding convenience of travel arguments insufficient to require transfer to the Northern District of Illinois rather than the

Eastern District of Wisconsin); *In re Clark Oil & Ref. Corp. Antitrust Litig.*, 364 F. Supp. 458, 459 (J.P.M.L. 1973) (in choosing between the Eastern District of Wisconsin and the Northern District of Illinois, the Panel noted the courts "are in proximity to each other" and either forum would not "substantially inconvenience any of the parties," but designating Wisconsin as the preferable transferee district because the defendant's home office and anticipated witnesses were located there).

Green Bay, like Chicago, is located in the upper Midwest and is geographically central relative to the nationwide dispersion of parties and counsel. Given the proximity of the two districts and the absence of any meaningful nexus to Illinois, Chicago's airport statistics do not outweigh the concentration of cases, corporate presence, and procedural progress already established in the Eastern District of Wisconsin–or the Northern District of California's strong interest in fire-related litigation.

Accordingly, centralization and transfer of the related actions to the Northern District of Illinois is no more appropriate, and materially less compelling, than to either the Eastern District of Wisconsin or the Northern District of California.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff City of Arcadia respectfully requests that the Panel deny Defendants' motion to transfer these actions to the Northern District of Illinois and instead centralize the Related Actions in the Eastern District of Wisconsin or the Northern District of California.

Date: February 11, 2026                    Respectfully submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala (California Bar No. 245748)
Elizabeth T. Castillo (California Bar No. 280502)
Christopher F. Jeu (California Bar No. 247865)

Christian S. Ruano (California Bar No. 352012)
Lauren A. Devens (California Bar No. 364511)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cjeu@cpmlegal.com
cruano@cpmlegal.com
ldevens@cpmlegal.com

Alex Phillips (Wisconsin Bar No. 1098356)
Brittany Resch (Minnesota Bar No. 0397656)
Sam Strauss (Wisconsin Bar No. 1113942))
Raina Borrelli (Minnesota Bar No. 0392127)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com
bresch@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff City of Arcadia*

14