**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | MDL No. 3179 |

**CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
TRANSFER AND CENTRALIZE RELATED ACTIONS FOR
<u>CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      Centralization Under Section 1407 Is Proper and Preferred Because Section 1404
        Transfer Will Not Avoid Multidistrict Litigation. .............................................. 2

II.     The Northern District of Illinois Is the Most Appropriate Transferee District. .................. 6

        A.      The Relevant Factors All Support Centralization in the Northern District
                of Illinois. ..................................................................................................7

        B.      The Eastern District of Wisconsin Is Not Well Suited for Centralization. ............10

        C.      The District of Kansas Is Less Accessible to the Parties and Relevant
                Evidence and Witnesses Than the Northern District of Illinois. ..........................13

        D.      The Northern District of California Is Not a Viable Alternative. ..........................14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)..................................................................................9

*In re Aggrenox Antitrust Litigation*,
11 F. Supp. 3d 1342 (J.P.M.L. 2014).................................................................................6, 8

*In re Airline Baggage Fee Antitrust Litigation*,
655 F. Supp. 2d 1362 (J.P.M.L. 2009)................................................................................4

*In re BP p.l.c. Securities Litigation*,
734 F. Supp. 2d 1376 (J.P.M.L. 2010)........................................................................9, 10, 13

*Catch Curve, Inc. v. Venali, Inc.*,
2006 WL 4568799 (C.D. Cal. Feb. 27, 2006).....................................................................3

*In re Crop Protection Products Loyalty Program Antitrust Litigation*,
655 F. Supp. 3d 1380 (J.P.M.L. 2023)................................................................................4

*In re Darvocet, Darvon & Propoxyphene Products Liability Litigation*,
780 F. Supp. 2d 1379 (J.P.M.L. 2011)......................................................................9, 10, 13

*Davis v. A & J Electronics*,
792 F.2d 74 (7th Cir. 1986) .................................................................................................3

*In re Delta Dental Antitrust Litigation*,
433 F. Supp. 3d 1358 (J.P.M.L. 2020)................................................................................9

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*,
787 F. Supp. 2d 1358 (J.P.M.L. 2011)................................................................................7

*In re Generac Solar Power Sys. Marketing, Sales Practices & Products Liability Litigation*,
677 F. Supp. 3d 1370 (J.P.M.L. 2023)................................................................................12

*In re Harley-Davidson Aftermarket Parts Marketing, Sales Practices & Antitrust Litigation*,
658 F. Supp. 3d 1381 (J.P.M.L 2023)................................................................................12

*In re Lens.com Marketing & Sales Practices Litigation*,
776 F. Supp. 3d 1362 (J.P.M.L. 2025)................................................................................2

*In re Navistar Maxxforce Engines Marketing, Sales Practices & Products
Liability Litigation*,
67 F. Supp. 3d 1382 (J.P.M.L. 2014)......................................................................8

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
269 F. Supp. 2d 1372 (J.P.M.L. 2003)..................................................................10

*In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*,
314 F. Supp. 2d 1376 (J.P.M.L. 2004)....................................................................9

*In re Society Insurance Co. COVID-19 Business Interruption Protection
Insurance Litigation*,
492 F. Supp. 3d 1359 (J.P.M.L. 2020)....................................................................8

*In re Subway Footlong Sandwich Marketing & Sales Practices Litigation*,
949 F. Supp. 2d 1369 (J.P.M.L 2013)...................................................................12

*In re Sulfuric Acid Antitrust Litigation*,
270 F. Supp. 2d 1379 (J.P.M.L. 2003)....................................................................8

*In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*,
699 F. Supp. 3d 1396 (J.P.M.L. 2023) ...................................................................4

*In re Velocity Express, Inc., Wage & Hour Employment Practices Litigation*,
581 F. Supp. 2d 1368 (J.P.M.L. 2008)..................................................................12

**Statutes**

28 U.S.C. § 1404.................................................................................... *passim*

28 U.S.C. § 1407.................................................................................... *passim*

**Court Rules**

Federal Rule of Civil Procedure 42 .........................................................................5

**INTRODUCTION**

The majority of Plaintiffs agree that the Panel should centralize the Related Actions,[1] two potential tag-along actions (the "Tag-Along Actions"),[2] and any future tag-along actions in a single district under Section 1407. The remaining Plaintiffs oppose Section 1407 centralization in favor of *partial* centralization through Section 1404 transfer motions. But, as their oppositions concede, Section 1404 transfer cannot achieve centralization of *all* related actions. *First*, there are actions pending in two districts—the District of Kansas and the Central District of California—where no party has sought Section 1404 transfer. *Second*, the Eastern District of Wisconsin does not have personal jurisdiction over all Defendants. *Third*, new tag-along actions will inevitably be filed in new districts. Indeed, Plaintiffs have filed two Tag-Along Actions in new districts since Defendants filed their Motion. The minority of Plaintiffs who prefer Section 1404 transfer have no response to these points. They strain to oppose Section 1407 centralization solely to preserve their status in the interim class leadership structure in the Eastern District of Wisconsin.

The relevant question is thus "where, rather than whether, the case should be centralized," as the *UG* Plaintiff puts it. ECF No. 42 at 1. The factors this Panel considers all point to the Honorable John J. Tharp, Jr. in the Northern District of Illinois as the appropriate destination for this MDL. The Northern District of Illinois is the most convenient and accessible of the proposed transferee districts. That is the most important factor where, as here, the litigation lacks a logical center of gravity and the parties, putative class members, and relevant witnesses and evidence are dispersed throughout the country. The Northern District of Illinois is also well equipped to oversee

---

[1] Terms defined in Defendants' opening brief have the same meaning herein.

[2] *See* ECF No. 38 (*Unified Government of Wyandotte County and Kansas City, Kansas v. REV Group, Inc., et al.*, No: 2:26-cv-02057-JWB-ADM (D. Kan. filed Jan. 29, 2026) (the "*UG* Action")); ECF No. 52 (*People of the State of Cal., et al. v. REV Group, Inc., et al.*, No. 2:26-cv-01468 (C.D. Cal. filed Feb. 12, 2026) (the "*LA County* Action")).

nationwide litigation and supported by the most parties, including the *UG* Plaintiff. And Judge Tharp unquestionably has the skill and experience needed to manage this MDL.

Plaintiffs' proposed alternative districts are suboptimal because they are inconvenient for the majority of parties. The Green Bay Division of the Eastern District of Wisconsin is geographically isolated, has limited resources, and rarely handles MDLs. And while the District of Kansas is a superior choice to Green Bay, it is local to only two Plaintiffs and less accessible to most parties than the Northern District of Illinois. The Northern District of California is also not a favorable forum because it is located far away from nearly all parties.

Accordingly, the Panel should centralize the Related Actions, Tag-Along Actions, and any future tag-along actions before Judge Tharp in the Northern District of Illinois.

**ARGUMENT**

I.    **Centralization Under Section 1407 Is Proper and Preferred Because Section 1404 Transfer Will Not Avoid Multidistrict Litigation.**

All Plaintiffs agree that the criteria for centralization under Section 1407 are satisfied. Most Plaintiffs fully support centralization. ECF No. 39 at 3–4; ECF No. 41 at 2–5; ECF No. 42 at 4–5; ECF No. 44 at 4. And the minority that do not—the *Augusta*, *Newstead*, *Philadelphia*, *Revere*, *Chelsea*, and *Roseland* Plaintiffs (the "Objecting Plaintiffs")—concede that centralization is proper "[i]n the event the Panel undertakes a 1407 analysis," but argue that consolidation via Section 1404 transfer is preferred. ECF No. 43 at 4–9; *see also* ECF No. 45 at 2 (joining these arguments); ECF No. 46 at 2 (same). Section 1404 transfer is preferred, however, only "where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation," as the Objecting Plaintiffs acknowledge. *In re Lens.com Mktg. & Sales Pracs. Litig.*, 776 F. Supp. 3d 1362, 1364 (J.P.M.L. 2025). The Objecting Plaintiffs

2

*concede* that Section 1404 motions would not centralize *all* related actions into one forum, and, thus, cannot seriously dispute that Section 1407 centralization is necessary here.

*First*, not all Plaintiffs who filed outside of the Eastern District of Wisconsin have sought to transfer into that district under Section 1404. The Objecting Plaintiffs focus on Section 1404 motions pending in the *Revere*, *Chelsea*, and *Roseland* Actions. ECF No. 43 at 4. Although the *Plaquemine* Action has been voluntarily dismissed,[3] Tag-Along Actions have been filed in two new districts during the pendency of this Motion: the *UG* Action in the District of Kansas and *LA County* Action in the Central District of California. Successful Section 1404 motions would therefore leave actions pending in at least three districts. For that reason alone, the *UG* and *Liberty* Plaintiffs agree that "centralization under Section 1407 is the better option." ECF No. 42 at 5; *accord* ECF No. 39 at 4.

*Second*, the Objecting Plaintiffs do not dispute that their Section 1404 motions may fail because the Eastern District of Wisconsin does not have personal jurisdiction over all Defendants, namely the Investor Defendants and AIP, LLC in the *Revere* Action pending in the District of Massachusetts. As Defendants explained, personal jurisdiction over all defendants is a requirement for Section 1404(a) transfer, unlike with Section 1407 transfer. ECF No. 1-1 ("Defs.' Mem.") at 13 (citing *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006)). The Eastern District of Wisconsin does not have general or specific personal jurisdiction over the Investor Defendants and AIP, LLC because they do not transact business in that district, and the Seventh Circuit does not recognize a conspiracy exception for personal jurisdiction. *Id.* (citing *Davis v. A & J Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986)). The Investor Defendants and AIP, LLC

---

[3] The City of Plaquemine voluntarily dismissed its action in Louisiana state court, but that plaintiff could still refile in federal court outside of the Eastern District of Wisconsin.

have opposed the *Revere* Plaintiff's motion to transfer on that basis. ECF No. 100 at 8–15, *Revere Action*. Yet neither the *Revere* Plaintiff nor the other Objecting Plaintiffs offer any response to this argument. *See* ECF No. 43 at 4–6; *see generally* ECF Nos. 45–46.

*Third*, new plaintiffs will likely file related cases in districts outside of the Eastern District of Wisconsin. Defs.' Mem. at 14. That is not "speculation," as the Objecting Plaintiffs assert, but reality. ECF No. 43 at 5. Since Defendants filed this Motion, plaintiffs filed *two* Tag-Along Actions in other districts. *See* ECF Nos. 38, 52. The *UG* and *LA County* Actions surely are not the last tag-along actions that plaintiffs will bring in their home jurisdiction absent centralization. Plaintiffs have filed fourteen actions in five districts to date, and they allege there are "thousands" of putative class members nationwide. *E.g.*, *La Crosse* Compl. ¶ 121.

As Defendants explained, the Panel has repeatedly recognized that the "potential for more tag-along actions and the uncertainty of the result and timing of rulings on any future Section 1404 transfer motions" weighs heavily in favor of centralization. Defs.' Mem. at 14 (quoting *In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1382 (J.P.M.L. 2023), and citing *In re Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009)). Indeed, the Objecting Plaintiffs' own authority supports centralization. The Objecting Plaintiffs rely on *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, where the Panel "decline[d] to speculate as to the impact of as yet unfiled third-party claims" that defendants alleged would introduce predominant unique factual issues on the efficiency of common proceedings. 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2023). But the Panel went on to hold that centralization was proper "[g]iven the large and growing number of involved actions and counsel." *Id.* at 1399. The number of related actions is ever-growing here too, favoring centralization.

4

The Objecting Plaintiffs also wrongly assert that Section 1404 transfer is more efficient than centralization "because a § 1404(a) transfer applies for all purposes, including trial, whereas centralization into an MDL is only for pre-trial purposes." ECF No. 43 at 5 (quotation omitted). Courts frequently consolidate cases for pretrial purposes only under Federal Rule of Civil Procedure 42(a)—in fact, that is precisely what the Eastern District of Wisconsin Plaintiffs have sought in the Related Actions pending there. *See* ECF No. 54 at 1, *La Crosse* Action ("Plaintiffs also oppose consolidation [of direct and indirect purchaser actions] at trial . . . ."); *see generally* ECF No. 57, *Augusta* Action (supporting consolidation of direct and indirect purchaser actions for pretrial purposes). And the vast majority of cases centralized under Section 1407 never return to their home district for trial.[4] Thus, this purported distinction between Section 1407 and Section 1404 is immaterial to the appropriate method of consolidation.

At bottom, the Objecting Plaintiffs' preference for Section 1404 transfer is rooted not in principles of efficiency but rather in a desire to maintain their status in the interim class leadership structure. As they acknowledge, the court appointed counsel for the *Augusta*, *Newstead*, *Philadelphia*, and *Revere* Plaintiffs as interim co-lead counsel for the Direct Purchaser Class in the Eastern District of Wisconsin actions (despite that the *Revere* Plaintiff's counsel is not representing any plaintiff in the Eastern District of Wisconsin). ECF No. 43 at 10; ECF No. 46 at 5. The Objecting Plaintiffs clearly seek to preserve this leadership structure pursuant to their side deals—which, contrary to their assertion, has no bearing on whether "consolidation is likely achievable through other methods." ECF No. 46 at 5.

---

[4] *See Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. § 1407* at 3, United States Judicial Panel on Multidistrict Litigation (Fiscal Year 2020), https://www.jpml.uscourts.gov/sites/jpml/files/Fiscal_Year_Statistics-2020_1.pdf (stating that out 953,541 actions centralized since 1968, 17,104 actions had been remanded for trial and 609,333 actions had been terminated in the transferee court as of September 30, 2020).

Accordingly, Section 1407 centralization is the only reasonable means to consolidate all Related and Tag-Along Actions and any future tag-along actions in a single district.

**II.       The Northern District of Illinois Is the Most Appropriate Transferee District.**

Plaintiffs do not meaningfully dispute that the primary factors that guide the Panel's determination of the appropriate transferee district all support the Northern District of Illinois. *See* Defs.' Mem. at 14–15 (citing *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014)). The Northern District of Illinois is central to the geographically dispersed parties here and sources of relevant witnesses and evidence, accessible to nearly all parties by direct flight, and most supported by the parties. It is also well equipped to manage nationwide antitrust class action litigation. And Judge Tharp undoubtedly has the skill and experience needed to oversee this MDL. Plaintiffs propose a variety of alternative districts, but none is better suited to handle this sprawling MDL:

- *The Green Bay Division of the Eastern District of Wisconsin*: is geographically isolated, home to only three parties and few sources of relevant witnesses and evidence, and lacks the resources (including a full-time magistrate judge) to oversee this nationwide litigation.

- *The District of Kansas*: is centrally located but less accessible to most of the parties and sources of relevant witnesses and evidence than the Northern District of Illinois.

- *Northern District of California*: is not near any party or source of relevant witnesses or evidence except the *Arcadia* and *LA County* Plaintiffs.

Ultimately, the Northern District of Illinois is the best option in terms of location, resources, and experience to efficiently manage this nationwide litigation. But the District of Kansas would be a suitable alternative because it is well equipped to handle this complex case and far more convenient than the Green Bay Division of the Eastern District of Wisconsin or the Northern District of California.

6

**A. The Relevant Factors All Support Centralization in the Northern District of Illinois.**

The Related and Tag-Along Actions involve alleged antitrust conspiracies spanning the United States. Thus, "the Panel should select a district that is 'geographically central and accessible'" to the parties and relevant witnesses and evidence, as Plaintiffs themselves acknowledge. ECF No. 43 at 9 (quoting *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011)). This factor points to the Northern District of Illinois. With the *UG* and *LA County* Actions, Plaintiffs are located in fourteen different cities in ten different states, including four states throughout the Midwest. *See* Defs.' Mem. at 15. Defendants are likewise dispersed throughout the Midwest, Northeast, and Southwest. *Id.* Relevant witnesses and evidence are therefore located all over the country as well. The following graphic showing states where the parties are based underscores the centrality of the Northern District of Illinois:



Not only is the Northern District of Illinois centrally located, it is also well connected: between its two airports, 45 out of 46 parties (including the *UG* and *LA County* parties) have access to daily direct flights to Chicago.[5] *See* App'x 1.

Plaintiffs also do not and cannot dispute that the Northern District of Illinois offers the judicial resources "to efficiently manage" complex and multidistrict litigation, as the Panel has frequently observed. *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359, 1363 (J.P.M.L. 2020); *see also In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 67 F. Supp. 3d 1382, 1384 (J.P.M.L. 2014); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003). Nor could Plaintiffs dispute that Judge Tharp is a respected jurist with nearly 15 years of experience, including experience managing consolidated antitrust class actions. *See* Defs.' Mem. at 17–18.

Finally, more parties support the Northern District of Illinois than any other proposed district. *See In re Aggrenox*, 11 F. Supp. 3d at 1343. All Defendants support the district. The *UG* Plaintiff likewise does not object to centralization in the Northern District of Illinois and views it as "the next-best option" to its home district. ECF No. 42 at 8.

Plaintiffs assert two objections to this district. Neither has merit. *First*, Plaintiffs object that it is purportedly too busy. Specifically, they assert that the Northern District of Illinois currently has twelve pending MDLs, and the judges there each have 1,169 cases on average as of December 31, 2025. ECF No. 39 at 6. But Judge Tharp does not appear to be too busy to handle this case. He

---

[5] In addition to the four plaintiffs added by the *UG* and *LA County* Actions, the *LA County* Action introduces the following defendant entities: KME Global, LLC, KME Holdings, LLC, KME RE Holdings LLC, FFA Holdco, Inc., FFA Acquisition Co., Inc., Ferrara Fire Apparatus Holding Company, Inc., Smeal Holding, LLC, Detroit Truck Manufacturing, LLC, AIP CF IV, LLC, AIP/CHC Investors, LLC, Maxi-Metal, Inc., Boise Mobile Equipment, Inc., and BME Fire Trucks LLC. *See* ECF No. 52-1.

does not have an MDL and he has a much lighter case load (320 cases as of the filing of this reply) than the average (1,169 cases). Ex. A. In fact, Judge Tharp has far fewer cases than the average judge in the Eastern District of Wisconsin (487 cases). *See* ECF No. 39 at 6; ECF No. 44 at 8.

*Second*, they argue that the Northern District of Illinois is an inappropriate forum because no Related Actions are pending there and no current parties are based there. ECF No. 39 at 7; ECF No. 44 at 12–13. But the Panel has recognized that the location of pending cases "is not a particularly significant factor" where, as here, "potential plaintiffs and putative class members will reside in every corner of the country" and the parties "are located in several states," as Defendants explained in their opening brief. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) (transferring actions to a district without any pending actions); *accord In re BP p.l.c. Secs. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) ("[T]hat no constituent action is currently pending in the Southern District of Texas is not an impediment to its selection as the transferee district.").

Likewise, that no parties are based in the Northern District of Illinois does not weigh against transfer given that the parties, putative class members, and sources of relevant witnesses and evidence are scattered throughout the country, and the Northern District of Illinois is the most central forum. *See In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (recognizing the Northern District of Illinois as a "geographically central and accessible forum" for nationwide multidistrict litigation without a clear focal point); *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) (same); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) (same).

Accordingly, transferring the Related Actions for centralization before Judge Tharp in the Northern District of Illinois is appropriate.

**B.      The Eastern District of Wisconsin Is Not Well Suited for Centralization.**

Although a majority of Plaintiffs prefer centralization before Judge Conway in the Eastern District of Wisconsin, those Plaintiffs fail to distinguish between the Green Bay Division, where Judge Conway sits, and the Milwaukee Division. Because the Green Bay Division is geographically isolated and lacks the resources to handle MDLs, Plaintiffs fail to show that any of the relevant factors favors centralization in the Eastern District of Wisconsin.

To start, Plaintiffs rely largely on a nonfactor: that a majority of Related Actions are pending in the Green Bay Division. *See* ECF No. 39 at 4–5; ECF No. 41 at 5–6; ECF No. 43 at 10; ECF No. 44 at 4–5. Again, the location of pending cases "is not a particularly significant factor" where "potential plaintiffs and putative class members will reside in every corner of the country" and the parties "are located in several states." *In re Darvocet*, 780 F. Supp. 2d at 1381; *accord In re BP*, 734 F. Supp. 2d at 1379. And just because a majority of Plaintiffs chose to file in an inconvenient district for this nationwide litigation does not make the Green Bay Division "the obvious center of gravity for this litigation." ECF No. 39 at 4 (quotation omitted); *see, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) (finding that "no single district [stood] out as the geographic focal point for this nationwide litigation" despite that a majority of related actions were pending in a single district).

Applying the relevant factors, Plaintiffs overstate the Green Bay Division's proximity to some of the parties and sources of relevant witnesses and evidence. *See* ECF No. 39 at 4–6; ECF No. 41 at 6–7; ECF No. 43 at 9–10; ECF No. 44 at 7–8. Only three Defendants out of 46 total parties are located in the Eastern District of Wisconsin, and only two in the Green Bay Division.

10

Defs.' Mem. at 15 & n.27. The other 14 Defendants are based outside of Wisconsin altogether, as are 12 out of 14 Plaintiffs.[6] *Id.* at 15 & nn. 26–27. Defendants' manufacturing plants are also located in many states all over the country. *Id.* at 15 & n.28. The vast majority of parties and sources of relevant witnesses and evidence are thus found in other districts and states, like the *UG* Plaintiff observes. *See* ECF No. 42 at 7 (noting that "important documents and witnesses may not be in Wisconsin at all"). That a few parties have offices in Wisconsin hardly makes the Green Bay Division geographically favorable where the actions' overall "geographic dispersion underscores that no single forum [otherwise] predominates," especially when those parties themselves do not view the Green Bay Division as a convenient forum. *See* ECF No. 44 at 8.

Plaintiffs likewise exaggerate the Green Bay Division's geographic convenience to parties, counsel, and witnesses located elsewhere. Plaintiffs assert that the Green Bay Division "is a geographically central and accessible forum," but concede that getting to Green Bay requires a connecting flight in Chicago or several other cities for nearly every party and their counsel. *See* ECF No. 43 at 10; *see also* ECF No. 41 at 9 ("To the extent that Green Bay, Wisconsin is not *as* accessible as Chicago, Illinois . . . ." (emphasis in original)); ECF No. 42 at 7 (underscoring the inaccessibility of Green Bay to most parties and their counsel). The Green Bay Division is thus undisputedly less accessible than the Northern District of Illinois and the other proposed districts.

While the *Milwaukee* Division of the Eastern District of Wisconsin is more accessible than the Green Bay Division, as certain Plaintiffs suggest, *see* ECF No. 41 at 8, that is beside the point given that Plaintiffs seek centralization before Judge Conway, who sits in the *Green Bay* Division.

---

[6] The *Arcadia* Plaintiff's assertion that Rosenbauer is incorporated or has its principal place of business in Wisconsin, ECF No. 44 at 7, is incorrect and contradictory. *Arcadia* itself alleges that Rosenbauer "is incorporated in Delaware and headquartered in Lyons, South Dakota." *Arcadia* Compl. ¶ 39.

11

*See id.* at 1, 5, 8; ECF No. 39 at 9; ECF No. 43 at 12; ECF No. 44 at 2, 4, 6; ECF No. 45 at 2; ECF No. 46 at 5. Plaintiffs' cited cases identifying the Milwaukee Division as a geographically convenient and accessible transferee forum are thus inapposite. *See In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 677 F. Supp. 3d 1370, 1371 (J.P.M.L. 2023); *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L 2013).

Plaintiffs further overstate the Green Bay Division's capacity to handle nationwide multidistrict litigation. The Objecting Plaintiffs assert that "the Eastern District of Wisconsin has a long history of successful MDL management and compares favorably to Defendants' suggested forum, the Northern District of Illinois, in terms of the number of MDLs pending." ECF No. 43 at 11. This again refers to the *Milwaukee* Division, where Plaintiffs themselves do not seek centralization. It appears the Panel has only *twice* centralized cases in the Green Bay Division, both times before Senior Judge Griesbach. *See In re Velocity Exp., Inc., Wage & Hour Emp. Pracs. Litig.*, 581 F. Supp. 2d 1368, 1369 (J.P.M.L. 2008); *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 658 F. Supp. 3d 1381, 1382 (J.P.M.L 2023). Plaintiffs also ignore that the Green Bay Division has *no* full-time Magistrate Judge, making it particularly unsuited to multidistrict litigation.[7] Plaintiffs instead place undue reliance on the Eastern District of Wisconsin's purported underutilization: its 5.7-month median time to disposition in 2025 was only two weeks less than the Northern District of Illinois's (6.2 months), and again, its average case load per judge as of December 31, 2025 was significantly *higher* than Judge Tharp's case load as of the filing of this reply. *See* ECF No. 39 at 6; ECF No. 43 at 11; ECF No. 44 at 8–9.

---

[7] *See Judges by Seniority*, United States District Court for the Eastern District of Wisconsin, https://www.wied.uscourts.gov/judges.

Plaintiffs also overstate the extent to which Judge Conway has advanced the Related Actions pending in the Eastern District of Wisconsin. As Plaintiffs concede, the court has engaged in limited "case management efforts" to date—i.e., extending Defendants' deadlines to respond to the complaints and other case deadlines, consolidating the Eastern District of Wisconsin actions into separate direct and indirect purchaser actions, and appointing interim class counsel. ECF No. 44 at 6; *see also* ECF No. 41 at 8; ECF No. 43 at 10. Defendants have yet to respond to any complaints; the court has yet to hold a case management conference; and the parties have yet to begin discovery. The court thus has not meaningfully advanced the Eastern District of Wisconsin actions or had a meaningful opportunity to engage with the issues. Given that *all* pending actions remain in their procedural infancy, "transfer to another district should not be disruptive." *In re Darvocet*, 780 F. Supp. 2d at 1382; *accord In re BP*, 734 F. Supp. 2d at 1379.

In short, none of the relevant factors favor centralization in the Green Bay Division of the Eastern District of Wisconsin. It is less convenient and accessible to the vast majority of parties, less proximate to the vast majority of sources of relevant witnesses and evidence, less equipped to handle multidistrict litigation, and less supported by the parties.

> **C.    The District of Kansas Is Less Accessible to the Parties and Relevant Evidence and Witnesses Than the Northern District of Illinois.**

The *UG* Plaintiff favors consolidation in its home district, the District of Kansas, before Judge Holly L. Teeter, ECF No. 42 at 6–8, while the *Liberty* Plaintiff offers the District of Kansas in the alternative to the Green Bay Division of the Eastern District of Wisconsin, ECF No. 39 at 8–9. Defendants agree that the District of Kansas is centrally located and more accessible than the Green Bay Division, but they disagree that it is a superior option to the Northern District of Illinois. Only the *UG* and *Liberty* Plaintiffs are located in the Kansas City area, whereas the majority of parties and their counsel—including those in the upper Midwest, the Mid-Atlantic, and the

13

Northeast—are further from Kansas City than Chicago. And whereas 45 out of 46 parties have access to direct daily flights to Chicago, only 26 parties have access to direct daily flights to Kansas City or are local. *See* App'x 1.

For the same reasons, the District of Kansas is less accessible than the Northern District of Illinois to most sources of relevant witnesses and evidence. That Oshkosh and Pierce allegedly "have dealers located in Kansas," ECF No. 42 at 7, carries little to no weight given that Plaintiffs do not bring claims against these dealers and the allegations relating to these dealers are marginal. *See, e.g.*, *UG* Compl. ¶¶ 70–72.

Notably, the only Plaintiff whose first choice is the District of Kansas "would not object to centralization" in the Northern District of Illinois. ECF No. 42 at 8. For this additional reason, the Northern District of Illinois is the preferred forum to the District of Kansas. However, Defendants would still prefer the District of Kansas over the Green Bay Division of the Eastern District of Wisconsin and the Northern District of California.

### D.    The Northern District of California Is Not a Viable Alternative.

The *Arcadia* Plaintiff offers its home district, the Northern District of California, as an alternative transferee district. ECF No. 44 at 10–11. This option makes the least sense of all. Only two Plaintiffs are based in California and only one is located in the Northern District of California, while nearly all other parties are based in the Midwest, Mid-Atlantic, Northeast, or Southeast. The Northern District of California is therefore less convenient to the parties and less accessible to relevant witnesses and evidence than even the Green Bay Division of the Eastern District of Wisconsin. Given that both the Northern District of Illinois and the District of Kansas are fully capable of overseeing this multidistrict litigation, the Northern District of California's capacity and experience is a nonfactor. And "California's substantial public safety interest in the subject

14

matter of this litigation" is equally irrelevant, especially given that many other states represented by Plaintiffs could claim an equal public safety interest. *Id.* at 11.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants respectfully request that the Panel grant their motion and order the Related Actions, *UG* and *LA County* Tag-Along Actions, and any future tag-along actions centralized and transferred to the Honorable John J. Tharp, Jr., United States District Court Judge for the Northern District of Illinois, for consolidated pretrial proceedings.

Dated: February 18, 2026                          Respectfully submitted,


/s/ *Reid Schar*                                  /s/ *Arthur J. Burke*
Reid Schar                                        Arthur J. Burke
JENNER & BLOCK LLP                                DAVIS POLK & WARDWELL LLP
525 Market Street, 29th Floor                     450 Lexington Ave
San Francisco, CA 94105                           New York, NY 10017
(628) 267-6800                                    (212) 450-4000
rschar@jenner.com                                 arthur.burke@davispolk.com

Douglas E. Litvack                                Mari Grace
Jariel A. Rendell                                 Sean Stefanik
JENNER & BLOCK LLP                                DAVIS POLK & WARDWELL LLP
1099 New York Avenue, NW, Suite 900               1050 17th Street, NW
Washington, DC 20001                              Washington, DC 20036
(202) 637-6357                                    (202) 962-7000
dlitvack@jenner.com                               mari.grace@davispolk.com
jrendell@jenner.com                               sean.stefanik@davispolk.com

Jacob P. Wentzel                                  *Counsel for Defendants REV Group, Inc., E-*
JENNER & BLOCK LLP                                *One, Inc., Ferrara Fire Apparatus, Inc.,*
353 North Clark Street                            *Kovatch Mobile Equipment Corp., Spartan*
Chicago, IL 60654                                 *Fire, LLC, Smeal SFA, LLC, and Smeal LTC,*
(312) 222-9350                                    *LLC*
jwentzel@jenner.com

                                                  /s/ *Ashley B. Eickhof*
*Counsel for Defendants Oshkosh Corporation*      Ashley B. Eickhof
*and Pierce Manufacturing, Inc.*                  Creighton J. Macy
                                                  Stephen T. Loertscher

15

/s/ *Marcella S. Spoto*
John P. Loringer
Marcella S. Spoto
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
(414) 292-3019
john.loringer@wilsonelser.com
marcella.spoto@wilsonelser.com

*Counsel for Defendant Fire Apparatus*
*Manufacturers' Association*

BAKER & MCKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7000
ashley.eickhof@bakermckenzie.com
creighton.macy@bakermckenzie.com
stephen.loertscher@bakermckenzie.com

*Counsel for Defendants Rosenbauer America,*
*LLC, Rosenbauer South Dakota, LLC, and*
*Rosenbauer Minnesota, LLC*

/s/ *Paul C. Cuomo*
Paul C. Cuomo
Ed Duffy
Alexander Kraszewski
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
(202) 639-7700
paul.cuomo@bakerbotts.com
ed.duffy@bakerbotts.com
alexander.kraszewski@bakerbotts.com

*Counsel for Defendants AIP, LLC, American*
*Industrial Partners Capital Fund IV, LP,*
*American Industrial Partners Capital Fund*
*IV (Parallel), LP, and AIP/CHC Holdings,*
*LLC*

16

**Appendix 1**

| Part(y)(ies) | Nearest Major Airport | Nonstop Flight to ORD or MDW | Nonstop Flights to MCI |
|---|---|---|---|
| City of La Crosse | Rochester (RST) or La Crosse (LSE) | Yes | No |
| City of Augusta | Portland (PWM) | Yes | No |
| Newstead Fire Co. | Buffalo (BUF) | Yes | No |
| City of Onalaska | Rochester (RST) or La Crosse (LSE) | Yes | No |
| City of Philadelphia | Philadelphia (PHL) | Yes | Yes |
| City of Revere | Boston (BOS) | Yes | Yes |
| City of Chelsea | Boston (BOS) | Yes | Yes |
| Borough of Roseland | Newark (EWR) | Yes | Yes (starting in April 2026) |
| City of Ann Arbor | Detroit (DTW) | Yes | Yes |
| City of Liberty | Kansas City (MCI) | Yes | Local |
| City of Arcadia | Los Angeles (LAX) | Yes | Yes |
| Commack Fire District | LaGuardia (LGA) | Yes | Yes |
| Unified Government of Wyandotte County and Kansas City, Kansas | Kansas City (MCI) | Yes | Local |
| People of California, County of Los Angeles, Consolidated Fire Protection District of Los Angeles County | Los Angeles (LAX) | Yes | Yes |
| Oshkosh Corporation | Appleton (ATW) | Yes | No |
| Pierce Manufacturing, Inc. | Appleton (ATW) | Yes | No |
| REV Group, Inc. | Milwaukee (MKE) | Yes | Yes |
| Rosenbauer America, LLC | Sioux Falls (FSD) | Yes | No |
| Fire Apparatus Manufacturers' Association | Richmond (RIC) | Yes | No |
| E-ONE, Inc. | Orlando (MCO) | Yes | Yes |
| Ferrara Fire Apparatus, Inc., FFA Holdco, Inc., FFA Acquisition Co., Inc., Ferrara Fire Apparatus Holding Company, Inc. | New Orleans (MSY) | Yes | Yes |

17

| Part(y)(ies) | Nearest Major Airport | Nonstop Flight to ORD or MDW | Nonstop Flights to MCI |
|---|---|---|---|
| Kovatch Mobile Equipment, KME Global, LLC, KME Holdings, LLC, KME RE Holdings LLC | Lehigh Valley (ABE) | No | No |
| Spartan Fire, LLC | Sioux Falls (FSD) | **Yes** | No |
| Smeal SFA, LLC | Omaha (OMA) | **Yes** | No |
| Smeal LTC, LLC | Omaha (OMA) | **Yes** | No |
| Detroit Truck Manufacturing, LLC | Detroit (DTW) | **Yes** | **Yes** |
| Rosenbauer South Dakota, LLC | Sioux Falls (FSD) | **Yes** | No |
| Rosenbauer Minnesota, LLC | Minneapolis–St. Paul (MSP) | **Yes** | **Yes** |
| Maxi-Metal, Inc | Quebec City (YQB) | **Yes** | No |
| Boise Mobile Equipment, Inc. and BME Fire Trucks LLC | Boise (BOI) | **Yes** | No |
| Investor Defendants and AIP, LLC, AIP CF IV, LLC, AIP/CHC Investors, LLC | LaGuardia (LGA) | **Yes** | **Yes** |

18